ALLEMANIA FIRE INSURANCE COMPANY, Respondent, *v.* DUNCAN MCLEOD ET AL., Appellants.

### November 13, 1877.

1. A promissory note, endorsed by a firm, was protested for non-payment, and notices of protest to all parties concerned were delivered to a member of the firm, who, instead of mailing notice directly to a previous endorser, sent it to his partner, residing in the same city as the previous endorser, in consequence of which the time of giving notice to the latter was double that of the due course of mail. *Held,* that the previous endorser was released.

2. It is error to give declarations of law to the jury where there are no facts in evidence to which the law could apply.

APPEAL from the St. Louis Circuit Court.
*Reversed and remanded.*

M. KINEALY, for appellants, cited: 1 Pars. on Notes & Bills, 518; Story on Prom. Notes, secs. 308, 312, 331, 332; *Walker* v. *Stetson*, 14 Ohio (N. S.), 89.

A. HOLMES, for respondent, cited: *Bank* v. *Vaughan*, 36 Mo. 90; *Griffith* v. *Assman*, 48 Mo. 68; *Renshaw* v. *Triplett*, 23 Me. 213; *Bank* v. *Taylor*, 34 N. Y. 128; *Bank* v. *Hathaway*, 5 Metc. 212; Story on Prom. Notes, secs. 326, 328, 331.

LEWIS, P. J., delivered the opinion of the court.

Plaintiff, a corporation, resident in Pittsburg, sue, on a promissory note for $1,500, executed by defendants, D. McLeod & Co., of St. Louis, in favor of D. Crawford & Co., also of St. Louis, and by them endorsed to plaintiff,

through Hopkins & McKnight, its general agents at Chicago. A default was entered against defendants McLeod & Fogg, and the cause was tried by the court without a jury, upon the answer of defendants Crawford and Russell, who composed the firm of D. Crawford & Co. Judgment was rendered for plaintiff, and the defendants appealed.

It appears, that in the years 1873 and 1874, defendant McLeod was agent of plaintiff, in St. Louis, for obtaining applications for insurance policies and collecting premiums, and fell in arrear with his principal. In January, 1874, his indebtedness amounted to $4,000, and he gave to plaintiff two promissory notes of $2,000 each, with defendants Crawford & Co. as endorsers. The note sued on was given October 23, 1874, in renewal of one of these, so far as it remained unpaid.

Defendants allege that their endorsement was obtained by fraudulent representations made to them by McLeod, and claim that this is available in defence against the plaintiff, because it is not a holder for value. If it were true that the plaintiff was not a holder of the note for valuable consideration, the defence would be unquestionably good. *Smith* v. *Sac County*, 11 Wall. 139. But such is not the fact. A note endorsed on account of an antecedent indebtedness to the endorsee, without any consideration of forbearance, or credit given on the original debt, has been held to be without valuable consideration in the hands of the endorsee, and to be subject, as against him, to any defence which would be available between prior parties. But in the present case there was, at least, some evidence tending to show an understanding that the plaintiff should forbear to press its original demand, upon receipt of the notes. There was also evidence tending to show that the note sued on was duly credited in plaintiff's account against McLeod. In the entries for October, 1874, appears a credit, " By note, $1,500," and the account stands balanced, without any debit remaining. The court may have found for the

plaintiff upon each of these issues, and its finding could not be here disturbed.   There is nothing in the record indicating that the court's conclusions of fact were otherwise. The plaintiff must, therefore, be treated as a holder of the note for valuable consideration, and hence not liable to a defence for fraud between the makers and first endorsers.

A more serious question arises, however, upon the attempted notice to defendants of the dishonor of the note. The plaintiff's agents, Hopkins & McKnight, placed the note in the Fifth National Bank of Chicago for collection. It was thence transmitted to Pittsburg, where it was payable, and where it was duly protested for non-payment at maturity.   The notary mailed notices for all the parties concerned to the Fifth National Bank at Chicago, which, on March 2, 1875, delivered them to Hopkins & McKnight. Thus far there was no unreasonable delay, the note having been protested on February 26th, and a Sunday having intervened.   McKnight, one of the partners, thereupon mailed the notice intended for defendants to his copartner, Hopkins, at St. Louis, where it was supposed he then was, or soon would be.   Hopkins, however, did not reach St. Louis until the 7th, which was Sunday.   On Monday, the 8th, he received McKnight's letter, and caused the notice to be delivered on the same day to defendants.   It was shown that there was a daily mail, twelve hours in time, between St. Louis and Chicago.

At plaintiff's instance, the court declared the law to be that "if the notary protesting the note mailed, on the same day, notices of protest addressed to the several endorsers, under cover to the last endorser, and that such notices were received by each previous endorser in succession, by due course of mail, without unnecessary delay, from one to another, as soon as advised of the protest, such notice is sufficient, where there are several endorsers in different parts of the country, though it may take weeks before the first one receives the notice.   Nor does it make

any difference if the last endorsements are for collection merely."

This is a correct statement of the law, in general terms, but it fails of application in the present case. When McKnight received the notice in Chicago, this was effectual for both the partners. There was no need of any further notice to Hopkins, at St. Louis or elsewhere. It became the duty of the firm to send the notice to defendants, the next previous endorsers, by a mail which would leave before the close of business hours on the next following day. The law is imperative that such a notice, sent through the post-office, must be directed to the party at his residence or place of business, if either be known to the party sending, or can be ascertained upon diligent enquiry. But this was not done. If Hopkins had been a previous endorser, the delay in reaching him would have created no discharge. Or if McKnight had mailed the notice directly to defendants, and a similar delay had occurred, there would be no discharge as to them. For it is to be presumed that the servants of the government will perform their duty in carrying the mails, and when the party giving notice has duly committed the matter to their charge, thus doing all that is in his power, his responsibility is at an end, and the risk is thrown upon him who should receive the notice. But when McKnight mailed the notice to his partner, instead of to defendants, it was as if he had sent by a private messenger, and thus assumed all risks of a delay greater than that of the mails. Until it passed from the hands of Hopkins, on March 8th, the notice remained in the keeping of the firm as effectually as if it had never left Chicago. It results that a notice received by Hopkins & McKnight on March 2d, which, in due course of mail, if transmitted as the law requires, would have reached defendants on the 4th, at latest, was not received by them until four days later. The defendants were entitled, upon the dishonor of the note and notice thereof to their endorsers, to an immediate knowl-

edge of the fact, so that they might, if possible, protect themselves in a resort to the maker. · A long series of adjudications in commercial law has settled beyond any question the method whereby such a right must be protected, as between endorser and endorsee residing at different commercial centres connected by postal communication. If any other method be used, the party using it must be able to show that it resulted in no increase of delay. In this case Hopkins & McKnight, as defendants' endorsers, took all the risks of a departure from the prescribed forms, and have failed to show that no injury resulted therefrom to defendants. On the contrary, the detention of the notice from defendants was, as a direct consequence of its being mailed to Hopkins, fully doubled in time. By the well-settled rules of commercial law, this operates to release the defendant endorsers.

The Circuit Court refused, upon defendants' application, to declare the law in accordance with these principles. All the judges concurring, the judgment is reversed and the cause remanded.